**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| D'MARQUES JONES, | ) | CASE NO. 5:25-CV-00098-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| WARDEN TOM WATSON | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I.     Introduction

D'Marques Jones ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his sentence as a Serious Youthful Offender to life imprisonment with parole eligibility after 25 years.  (ECF No. 1).  This matter was referred to the undersigned under Local Rule 72.2 to prepare a report and recommendation on Petitioner's petition.  For the reasons set forth below, the undersigned recommends that the Court deny Jones's petition in its entirety and not grant him a certificate of appealability.

## II.     State Court Proceedings

Petitioner does not challenge the underlying facts that led to his detention, instead challenging the outcome of subsequent proceedings.  As set forth by the Ohio Court of Appeals for the Ninth Appellate District on appeal,[1] "[w]hen D.J. was 15, he anally raped his 3-year-old

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

sister, which caused injuries that resulted in her death."  (ECF No. 9-1 at PageID #: 1007).

### A.  Indictment, Trial, Verdict, and Sentencing

On July 23, 2012, a grand jury in the Summit County Court of Common Pleas named Petitioner in a juvenile indictment charging him with murder and rape.  (ECF No. 9-1 at PageID #: 749).  A jury found Petitioner guilty on both counts on December 17, 2012.  (*Id.* at PageID #: 752-53).  The juvenile court determined Petitioner was a Serious Youthful Offender ("SYO") and committed Petitioner to the custody of the Ohio Department of Youth Services through his twenty-first birthday.  (*Id.* at Page#: 754-55).  Further, the juvenile court imposed an adult sentence of life imprisonment with the possibility of parole after twenty-five years but stayed the adult sentence "pending the Juvenile's successful completion of his juvenile disposition."  (*Id.* at PageID #: 755).

### B.  Appeal and Initial Petion for Post-Conviction Relief

On February 4, 2013, Petitioner filed a notice of appeal to the Ninth Appellate District Court of Appeals.  (ECF No. 9-1 at PageID #: 757).  However, Petitioner subsequently moved to voluntarily dismiss his appeal and the appellate court dismissed the appeal on July 24, 2013.  (*Id.* at PageID #: 763-67).

Petitioner then filed a petition for post-conviction relief in the trial court, asserting that he received ineffective assistance of counsel based on counsel's alleged failure to investigate and failure to call specific fact and expert witnesses.  (*Id.* at PageID #: 768-77).  Petitioner withdrew his post-conviction petition on June 4, 2014.  (*Id.* at PageID #: 797).

### C.  Invocation of Petitioner's Adult Sentence

On October 7, 2016, the State of Ohio filed a motion to invoke the adult portion of Petitioner's SYO sentence and requested an emergency hearing given that Petitioner's twenty-first birthday was on November 27, 2016.  (*Id.* at PageID #: 804).  Petitioner moved to dismiss the

State's request and filed an opposition to the State's motion.  (*Id.* at PageID #: 821-33).  After a

hearing, the trial court granted the State's motion to invoke the adult sentence.  (*Id.* at PageID #:

867-73).

Petitioner filed a timely notice of appeal.  (*Id.* at PageID #: 881).  On appeal, Petitioner

raised the following assignments of error:

1. The State cannot initiate the request to invoke the adult portion of a child's SYO when the child is in DYS's institutional custody, in violation of R.C. 2152.14(A).

2. The juvenile court erred when it determined that D.J. engaged in conduct that creates a substantial risk to the safety and security of the institution, community, or the victim in the absence of clear and convincing evidence, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16, Ohio Constitution; and R.C. 2152.14(E).

3. The mandatory sentencing scheme in R.C. 2971.03 is unconstitutional because it does not permit the juvenile court to make an individualized determination about D.J.'s sentence or the attributes of his youth, in violation of his right to be free from cruel and unusual punishment, as guaranteed by the Eighth Amendment to the U.S. Constitution; and Article I, Section 9, Ohio Constitution.

4. The juvenile court erred when it classified D.J. as a Tier III juvenile offender registrant because it lacked jurisdiction to issue the order, in violation of 2152.14(F) and *In re J.B.*, 134 Ohio St. 3d 538, 2012-Ohio-5675, 983 N.E.2d 1295, ¶ 1.

5. The juvenile court erred when it classified D.J. as an adult Tier III sex offender registrant, pursuant to the adult statutes, in violation of R.C. 2152.82; 2152.83; 2152.85; and 2950.01(G), (M).

(*Id.* at PageID #: 902-38).  The State filed an opposition brief and Petitioner filed a reply.  (*Id.* at

PageID #: 952-81, 996-1006).  On February 14, 2018, the appellate court affirmed.  (*Id.* at PageID

#: 1007-18).

Petitioner appealed the decision to the Ohio Supreme Court, raising the following propositions of law:

1. The State cannot initiate the request to invoke the adult portion of a child's SYO when the child is in DYS's institutional custody.

2. There must be clear and convincing evidence of "substantial risk" before invoking a child's stayed adult sentence.

3. The doctrine of res judicata does not apply when a child challenges the invoked adult portion of the SYO sentence at the invocation hearing.

4. A juvenile court loses jurisdiction to classify a juvenile offender registrant when it invokes the adult portion of the child's SYO.

(*Id.* at PageID #: 1019-39).  The State filed an opposition brief.  (*Id.* at PageID #: 1041-52).  On June 20, 2018, the Ohio Supreme Court declined to accept jurisdiction.  (*Id.* at PageID #: 1053).

**D.  Post-Conviction Petition Regarding Adult Sentence**

While pursuing his appeal, Petitioner also sought relief in the trial court, filing a petition for post-conviction relief on January 31, 2018.  (ECF No. 9-1 at PageID #: 1054).  Petitioner asserted violations of his Fifth Amendment right against self-incrimination; his Sixth Amendment right to counsel; his Sixth Amendment right to a jury trial; and his Fourteenth Amendment right to equal protection, as well as claiming ineffective assistance of trial counsel.  (*Id.* at PageID #: 1054-64).  The State moved to dismiss the petition and Petitioner filed a response.  (*Id.* at PageID #: 1103-1133).  On June 29, 2018, the trial court denied the petition, finding that all of Petitioner's claims were barred by res judicata.  (*Id.* at PageID #: 1162-65).

Petitioner appealed the post-conviction denial, raising the following assignments of error:

1. The trial court erred in dismissing claims one, two, and five of D'Marques's post-conviction petition on *res judicata* grounds because the claims relied upon evidence outside the record.

4

2.  Ineffective assistance of counsel and related Fifth and Sixth Amendment claims raised in post-conviction petitions for the first time are not barred by *res judicata* where they rely upon evidence that falls outside the appellate record.

(*Id.* at PageID #: 1168-79).  The State filed an opposition brief and Petitioner filed a reply.  (*Id.* at PageID #: 1184-1213, 1220-28).  On July 24, 2019, the appellate court affirmed the denial of post-conviction relief, finding that the petition was untimely filed.  (*Id.* at PageID #: 1229-35).

Petitioner moved for reconsideration of the appellate court's decision.  (*Id.* at PageID #: 1236-38).  On May 5, 2020, the appellate court denied reconsideration.  (*Id.* at PageID #: 1247-49).  Petitioner then filed a second motion for reconsideration and requested a stay of the appeal pending the outcome of a Civil Rule 60 motion to be filed in the trial court.  (*Id.* at PageID #: 1250).  The State filed a response and Petitioner filed a reply.  (*Id.* at PageID #: 1276-81).  On June 8, 2020, Petitioner filed a notice informing the appellate court of the trial court's decision granting his Civil Rule 60 motion and establishing that that his post-conviction petition was timely filed.  (*Id.* at PageID #: 1282-85).   The appellate court granted Petitioner's second motion for reconsideration and vacated its July 24, 2019 decision.  (*Id.* at PageID #: 1289-90).  On subsequent review, the appellate court affirmed in part and reversed in part, finding the trial court did not err in finding that Petitioner's first, second, and a portion of his fifth claim for relief were barred by res judicata but that it did error in dismissing the remainder of his fifth claim for relief.  (*Id.* at PageID #: 1291-1301).

Upon return to the trial court, the State filed a renewed motion to dismiss Petitioner's post-conviction petition.  (*Id.* at PageID #: 1302-16).  Petitioner filed a response, and the State filed a reply.  (*Id.* at PageID #: 1402-23).  On October 8, 2020, the trial court granted the State's motion and overruled the petition, concluding Petitioner had "failed to set forth a basis to demonstrate that the trial counsel was deficient, or that there is a reasonable probability that, but for the alleged

5

incidents of deficient counsel, the result of the proceeding would have been different."  (*Id.* at PageID #: 1424-30).

Petitioner appealed the decision, arguing the trial court erred in denying his petition and raising the following claims of ineffective assistance of counsel:

1. The failure of defense counsel to adequately cross-examine state psychologists deprives a defendant of his Sixth Amendment right to counsel.

2. The failure of defense counsel to present expert psychological testimony to rebut the State's witnesses regarding future dangerousness at a serious youthful offender invocation hearing deprives a defendant of his Sixth Amendment right to counsel.

3. The failure of defense counsel to challenge the lack of *Miranda* warnings deprives a defendant of his Sixth Amendment right to counsel.

4. The failure of defense counsel to challenge a defendant's uncounseled statement under the Sixth Amendment deprives a defendant of his Sixth Amendment right to counsel.

(*Id.* at PageID #: 1455-74).  The State filed a response and Petitioner filed a reply.  (*Id.* at PageID #: 1483-1533, 1542-55).  Following oral argument, the appellate court ordered supplemental briefing on the issue of whether the juvenile court had jurisdiction to hear Petitioner's post-conviction petition.  (*Id.* at PageID #: 1556-57).  The parties filed their supplemental briefs as directed.  (*Id.* at PageID #: 1596-1619).  On September 29, 2023, the appellate court affirmed the dismissal of the post-conviction petition but noted that rather than dismissing the petition for failing to set forth sufficient facts establishing any substantive grounds for relief, the juvenile court should have dismissed the petition based on a lack of subject matter jurisdiction.  (*Id.* at PageID #: 1620-29).

Petitioner appealed the decision to the Ohio Supreme Court, raising the following propositions of law:

1. The SYO statutory scheme is unconstitutional as applied to adjudicated delinquents who are subject to an invocation hearing close enough in time to their 21st birthday such that the juvenile court lacks subject matter jurisdiction to hear a timely filed post-conviction petition.

2. Juvenile courts do have subject matter jurisdiction to hear otherwise properly filed post-conviction petitions pertaining to SYO invocation even after an adjudicated delinquent has reached the age of 21.

(*Id.* at PageID #: 1630-43).  The State responded in opposition.  (*Id.* at PageID #: 1645-55).  On January 23, 2024, the Ohio Supreme Court declined to accept jurisdiction.  (*Id.* at PageID #: 1656).

## III.   Federal Habeas Corpus Petition

On January 20, 2025, Petitioner, through counsel, filed the instant petition for writ of habeas corpus, challenging the imposition of his adult sentence.  (ECF No. 1).  Petitioner raises the following grounds for relief:

1. Ohio's SYO statutory scheme is unconstitutional as applied to Jones because it violates his Sixth Amendment right to counsel.

2. Ohio juvenile courts have jurisdiction over a post-conviction petition filed in the juvenile court after the adjudicated delinquent has reached the age of 21.

3. Jones's Sixth Amendment rights were violated when his trial counsel provided ineffective assistance at his SYO hearing.

(*Id.* at 6-9).  Respondent filed a return of writ on August 25, 2025.  (ECF No. 9).  On September 22, 2025, Petitioner filed a reply in support of his petition.  (ECF No. 10).  Respondent filed a sur-reply on September 25, 2025.  (ECF No. 11).

## IV.   Legal Standards

Because Petitioner is a state prisoner seeking federal habeas relief, his petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), and corresponding case law.

### A.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all."  *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).  Thus, "errors in the application of state law … are usually not cognizable in federal habeas courts."  *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").  A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)).  Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition.  *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### B.  Exhaustion

Under 28 U.S.C. § 2254(b), a state prisoner seeking federal habeas relief must exhaust "the remedies available in the courts of the State" or show that (1) there is an absence of available State corrective process or (2) circumstances exist that render such process ineffective to protect the prisoner's rights.  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Id.* at 845.  However, when a

petitioner fails to exhaust all of his state law remedies but can no longer do so under state law, the claim becomes procedurally defaulted.  *Id.* at 848.

### C.  Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by the state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available.  *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-84 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).  When a state court declines to address a prisoner's federal claims because the petitioner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law.  *Id.* at 732-33.  To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied.  *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "ordinary appellate review procedures," and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim.  *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every

level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' … it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. Under this test, cause "must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754,

764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### D.  AEDPA Standard of Review

Turning to claims addressed on the merits in state court proceedings, 28 U.S.C. § 2254(d) provides that federal habeas relief shall not be granted unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, §

2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  Discussion

### A.  Timeliness of Federal Petition

Before addressing the merits of Petitioner's claims, Respondent argues the petition is barred by AEDPA's one-year statute of limitations.  (ECF No. 9 at 10-11).

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus under 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The one-year statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  A petitioner may seek equitable tolling by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010).  Additionally, the AEDPA statute of limitations may be subject to equitable tolling through a credible showing of actual innocence.  *See Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005).

Here, Respondent argues the statute of limitations began to run on September 19, 2018, ninety days after the Ohio Supreme Court's June 20, 2018 decision declining to accept jurisdiction over Petitioner's appeal of the invocation of his adult sentence, and ran until it expired on September 19, 2019.  (ECF No. 9 at 11-12).  Further, Respondent argues Petitioner's state post-conviction petition did not toll the statute of limitations because the "state appellate court ultimately concluded that, under Ohio law, the juvenile court did not have jurisdiction to rule on the petition because Jones was over the age of twenty-one" such that the state petition was not "properly filed" for tolling purposes.  (*Id.* at 12).  Respondent also argues Petitioner is not entitled to equitable tolling because "he has asserted no reasonable circumstances outside of his control explaining why he failed to timely file his petition before this Federal Court" and has not made a showing of actual innocence.  (*Id.* at 13-15).

Petitioner responds that his state "[p]ost-conviction proceedings have been pending and diligently pursued from January 31, 2018, until the Ohio Supreme Court's January 23, 2024, decision declining jurisdiction" such that his federal "habeas petition was timely filed on January 20, 2025."  (ECF No. 10 at 2).  Petitioner argues that he is entitled to statutory tolling because the

appellate court's conclusion that the juvenile court lacked jurisdiction over his post-conviction petition does not amount to a finding that his petition was not properly filed, but rather is a rejection based upon a procedural bar.  (*Id.*).  Even if he is not entitled to statutory tolling, Petitioner argues equitable tolling is appropriate because he has been pursuing his rights diligently and "[h]aving his petition dismissed for lack of jurisdiction *five years* after it was filed is an extraordinary circumstance."  (*Id.* at 3-4).  Alternatively, Petitioner argues that the statute of limitations should be determined under 28 U.S.C. § 2254(d)(1)(D) rather than (d)(1)(A) because "[t]he factual predicate for Jones is the decision regarding the juvenile court's jurisdiction over a timely filed post-conviction petition," which occurred on September 29, 2023, and was not exhausted until January 23, 2024 when the Ohio Supreme Court declined jurisdiction.  (*Id.*).

Respondent replies that Petitioner is not entitled to tolling because "jurisdictional matters are conditions to filing" such that the state post-conviction petition was not properly filed.  (ECF No. 11 at 2 (citation modified) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005)).  Additionally, Respondent argues 28 U.S.C. § 2254(d)(1)(D) does not apply to Petitioner's claims because he relies on the state appellate court's jurisdictional finding, which is legal rather than factual.  (*Id.* at 2-3).

In the present case, the timeliness of the petition is a complex issue.  The United States Supreme Court has undeniably concluded that an untimely state post-conviction petition is not properly filed for purposes of tolling the AEDPA statute of limitations.  S*ee Pace*, 544 U.S. at 414.  However, the undersigned has not found any case law clearly addressing whether a state appellate court's determination that the lower court—whose jurisdiction was determined pursuant to state statute—lacked jurisdiction over a post-conviction petition renders the petition improperly filed.  While the Supreme Court has implied such would be the case, the lack of clear guidance is reason

for pause.  *See Artuz v. Bennett*, 531 U.S. 4, 9 (2000) ("If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, … it will be *pending*, but not *properly filed*."). In light of the lack of clear guidance and given that, as discussed below, Petitioner is not otherwise entitled to relief, the undersigned assumes without deciding that the petition was timely filed and proceeds to address the parties' other arguments.

### B.  Ground One—SYO Statutory Scheme

In his first ground for relief, Petitioner asserts that Ohio's SYO statutory scheme is unconstitutional as applied to him because it violates his Sixth Amendment right to counsel.  (ECF No. 2 at 11).  Petitioner argues "[t]he Ninth District's 2023 opinion is contrary to and resulted in an unreasonable application of clearly established federal law as determined by the United States Supreme Court," citing *Mempa v. Rhay*, 389 U.S. 128 (1967); *Evitts v. Lucey*, 469 U.S. 387 (1985); and *Halbert v. Michigan*, 545 U.S. 605 (2005).  (*Id.* at 10).  Specifically, Petitioner asserts that *Mempa* establishes the right to counsel "at revocation proceedings, deferred sentencings, or other similar proceedings," such as the SYO invocation hearing; *Evitts* establishes "that the right to the assistance of counsel is the right to the effective assistance of counsel"; and *Halbert* establishes "that when a state institutes an appellate system, the system must be constitutional and fairly applied."  (*Id.* at 10-11).  Petitioner argues that since he was entitled to the effective assistance of counsel at his SYO hearing, he "must then have means of vindicating that right."  (*Id.* 12-13). Further, he argues that while he "does not have a federal constitutional right to file a petition for post-conviction relief," "Ohio has created post-conviction relief and is administering it unfairly due to what is likely a legislative drafting error."  (*Id.* at 13).  Petitioner's position is that "according to the Ninth District Court of Appeals, there are no means by which Jones can seek a remedy for

violations of his constitutional rights when those violations cannot be raised in direct appeal." (*Id.* at 14).

Respondent argues that Petitioner "was represented by counsel during every stage of every proceeding in state court"; the state appellate court never held that Petitioner did not have a right to counsel at the invocation hearing but rather held that the juvenile court lost jurisdiction over the post-conviction petition because Petitioner was over 21; and any delay in the State seeking to invoke the adult portion of Petitioner's sentence was a direct result of Petitioner's conduct. (ECF No. 9 at 21-22). While Petitioner "frames his argument as a challenge to Ohio's SYO statutes," Respondent argues "it appears his real concern is with Ohio's post-conviction statute and the juvenile court's jurisdiction" and such a claim is noncognizable because "[h]abeas corpus petitions 'cannot be used to mount challenges to a state's scheme of post-conviction relief.'" (*Id.* at 22 (quoting *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854-55 (6th Cir. 2017))).

Petitioner replies that he is not asking the Court "to invalidate Ohio's SYO statutory scheme as a whole or to ask if it provides an 'adequate corrective process'" but rather is asking the Court to determine whether his "SYO invocation was unconstitutional as applied to him because he is excluded from being able to pursue post-conviction remedies" and "unable to vindicate his right to effective assistance of counsel stemming from a court proceeding where a hearing and representation by counsel is required by Ohio law" (ECF No. 10 at 6).

To summarize, Petitioner's argument is that by filing the motion to invoke the SYO sentence so close to his twenty-first birthday when the juvenile court would lose jurisdiction, the State denied Petitioner the right to effective assistance of counsel because Petitioner had no means to vindicate that right following the juvenile court's decision. The undersigned agrees with Respondent that while Petitioner frames his ground as challenging the constitutionality of the SYO

statute, he seems to take issue with Ohio's post-conviction and juvenile court jurisdictional statutes.  Contrary to Petitioner's argument, the SYO statutes did not deny him his right to counsel but rather explicitly granted him that right.  *See* Ohio Rev. Code § 2152.14(D) (providing an unwaivable right to counsel "including counsel appointed under Juvenile Rule 4(A)" for the hearing on whether to invoke the adult portion of a SYO sentence).  Nor did the state appellate court find that Petitioner did not have a right to counsel at the invocation hearing, instead highlighting that the juvenile court lacked jurisdiction to consider Petitioner's claims.  (*See* ECF No. 9-1, PageID #: 1620-29).

However, even framing Petitioner's ground one as challenging the State's post-conviction and juvenile court jurisdictional statutes as unconstitutional because they denied him an opportunity to raise his ineffective assistance claims, Petitioner is not entitled to relief.  As an initial matter, the state appellate court concluded the juvenile court lacked jurisdiction to consider Petitioner's claims under Ohio law.  (*Id.*).  But "it is not the province of a federal habeas court to reexamine state court determinations on state law questions."  *Estelle*, 502 U.S. at 67-68.

Further, Plaintiff has not shown that there were no means available to him to assert his ineffective assistance claims.  Ohio's post-conviction statute allows any person who has been adjudicated a delinquent child to file a petition for post-conviction relief "in the court that imposed sentence."  Ohio Rev. Code § 2953.21(A)(1)(a)(i).  While Petitioner was sentenced by the juvenile court, the juvenile court is "a division of the court of common pleas."  Ohio Rev. Code § 2151.011(A)(1)(a); *see* Ohio Rev. Code § 2151.07 ("The juvenile court is a court of record *within the court of common pleas*.") (emphasis added).  While the juvenile court is a court of "limited jurisdiction, and … can exercise only the authority conferred upon it" by statute, *In re Z.R.*, 2015-Ohio-3306, ¶ 15, 144 Ohio St. 3d 380, 382, 44 N.E.3d 239, 242, "the court of common pleas is a

court of general jurisdiction, with subject matter jurisdiction that extends to 'all matters at law in equity that are not denied to it.'"  *State ex rel. Reynolds v. Kirby*, 2023-Ohio-782, ¶ 14, 172 Ohio St. 3d 273, 277, 223 N.E.3d 417, 421.  As noted by the state appellate court, nothing in Revised Code 2151.23—which outlines the jurisdiction of the juvenile court—"grant[s] the juvenile court exclusive original jurisdiction to conduct post-conviction proceedings."  (ECF No. 9-1, PageID #: 1625).  Neither party cites, nor has the undersigned found, any authority indicating that the general division of the appropriate common pleas court would not have been able to consider Petitioner's claims had he timely filed his state post-conviction petition with that division.

Thus, in the absence of any evidence that he attempted to bring his ineffective assistance claims in the general division of the common pleas court and was denied such an opportunity,[2] Petitioner has failed to establish that he is entitled to relief on ground one.

### C.  Ground Two – Juvenile Court Jurisdiction

In his second ground for relief, Petitioner asserts, alternatively, that Ohio juvenile courts do have jurisdiction over a post-conviction petition filed in the juvenile court after the adjudicated delinquent has reached the age of 21.  (ECF No. 2 at 15).  He argues that "[j]uvenile courts retain jurisdiction over an adjudicated delinquent after the person has reached the age of 21 in at least one particular circumstance," citing case law addressing a juvenile court's jurisdiction to review a juvenile's sex-offender classification.  (*Id.*).  He asserts that the "post-conviction statute implicitly gives juvenile courts additional exclusive original jurisdiction beyond that set forth in R.C. 2152.02(C)(6)."  (*Id.* at 16).

---

[2] The undersigned recognizes that by the time the appellate court concluded the juvenile court lacked jurisdiction over the post-conviction petition, any subsequently filed post-conviction petition would have likely been untimely and/or procedurally barred under Ohio law.  However, Petitioner's failure to seek relief in the appropriate court, which would have likely included raising arguments as to why the untimeliness or procedural deficiencies should be excused, does not entitle him to federal habeas relief.  Regardless, as discussed below, Petitioner's underlying ineffective assistance claims are meritless.

Respondent argues this claim is not cognizable because "[w]hether or not the Ohio Juvenile Court complied with procedural requirements of Ohio law is not a matter for [a federal court] to decide on a petition for habeas corpus relief" as a "federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law and procedure."  (ECF No. 9 at 23-24 (quoting *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987))).

The undersigned agrees with Respondent.  As outlined above, the existence and jurisdiction of Ohio's juvenile courts is a matter entirely governed by Ohio statutory law.  Thus, ground two presents solely a state law issue and is not cognizable on federal habeas review.  *See Estelle*, 502 U.S. at 67-68.  Accordingly, Petitioner is not entitled to relief on ground two.

**D.  Ground Three – Ineffective Assistance of Counsel**

In his third ground for relief, Petitioner argues that should the Court "conclude that Ohio courts can avoid considering the merits of Jones's ineffective assistance of counsel claims, then this Court must be the right venue for him to raise his claims" and the Court "must evaluate Jones's four ineffective assistance of counsel claims and should find that, at minimum, an evidentiary hearing is necessary."  (ECF No. 2 at 16).

**1.  Procedural Default**

Before addressing the merits of Jones's individual ineffective assistance claims, Respondent argues these claims are procedurally defaulted because Jones admits that they have not been presented to the Ohio Supreme Court, and he has failed to establish grounds to overcome the default.  (ECF No. 9 at 18-19).  Petitioner replies that "[t]he issue of jurisdiction has been exhausted" and "[t]he issues related to the merits of the petition are procedurally barred according to the Ninth Circuit."  (ECF No. 10 at 5).

Petitioner's reply appears to concede that his ineffective assistance claims were never raised to the Ohio Supreme Court and that no means are available for him to return to the state courts.  (*See* ECF No. 10 at 5 ("The issue of jurisdiction has been exhausted. The issues related to the merits of the petition are procedurally barred according to the Ninth District.").  "When a petitioner has failed to present a claim to the state courts and no state remedy remains available, the claim is technically exhausted and procedurally defaulted."  *Mammone v. Jenkins*, 49 F.4th 1026, 1047 (6th Cir. 2022).  Such is the situation here.  Thus, Petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  The problem here is that Petitioner wholly fails to present *any* argument as to why the procedural default should be excused.  (*See* ECF No. 10).  Thus, he has "forfeited any argument that his default is excused."  *Strong v. Nagy*, 825 F. App'x 239, 242 (6th Cir. 2020).  He has similarly "failed to show, let alone argue, that he is actually innocent of the crime or that the interest of justice require this Court to excuse his default."  *Id.*

Because Petitioner's ineffective assistance claims are procedurally defaulted and he has failed to show cause and prejudice to overcome the default or that a fundamental miscarriage of justice will result from the Court failing to consider his claims, his claims are properly dismissed.

### 2.  Merits Review

Even if Petitioner's ineffective assistance claims are not procedurally defaulted, the undersigned concludes each claim is meritless.

To establish ineffective assistance of counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A reviewing court's scrutiny of counsel's performance must be highly deferential. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Petitioner presents four separate ineffective assistance of counsel claims. Jones first argues that his counsel failed to adequately cross-examine two of the State's witnesses, Dr. Jennifer Alpert and Scott Spohn, regarding the use of the Juvenile Sex Offender Assessment Protocol-II, or "J-SOAP-II." (ECF No. 2 at 16-17). Specifically, Petitioner challenges counsel's failure to "question the State's witnesses as to their misplaced reliance on J-SOAP-II in determining whether Jones presented a substantial risk to the safety and security of the community." (*Id.* at 18). Petitioner argues the state court's decision on this claim is unreasonable because while the state court indicated it "did not rely on the J-SOAP-II tool in rendering its decision" but instead relied on Petitioner's "delay in engaging in sex offender treatment, his lack of progress, and failure to complete the treatment," these factors "are exactly what the J-SOAP-II is, according to the State's witnesses, designed to capture." (*Id.* at 18).

Petitioner next argues his counsel was ineffective "for failing to seek funding for, employ, consult with, and present the testimony of a mental health expert to testify as to the limitations of the J-SOAP-II instrument and its misuse by the State's witnesses." (ECF No. 2 at 19). Third, Petitioner argues his counsel was ineffective for failing to file a motion to suppress or otherwise object to the use of Jones's statements in sex offender treatment on grounds that they were not

22

preceded by legally required *Miranda* warnings.  (*Id.* at 20).  Finally, without distinguishing from his third claim and citing only to his state court filings, Petitioner argues his counsel was also ineffective for failing to file a motion to suppress or otherwise object to the use of Jones's statements in sex offender treatment.  (*Id.*).  Based on review of the state filings, Petitioner seems to assert that his "risk assessment and treatment … in DYS custody constituted a critical stage of his criminal proceeding" because it "constituted an evidence-gathering investigation during which the State was amassing evidence to use against [him] in his invocation hearing" and his counsel was ineffective for failing to object to the admission of Petitioner's statements during treatment "on the grounds that they occurred outside the presence of [Petitioner's] attorney after he had invoked his right to counsel in violation of the Sixth Amendment and related Ohio guarantees." (ECF No. 2-5 at 6. 10).

Respondent responds that Jones's claims were rejected by the trial court in a thorough decision and "[w]hile the trial court's decision was ultimately affirmed on different grounds, the decision was consistent with *Strickland*."  (ECF No. 9 at 27).

>   *a.     State Court Proceedings*

A review of the state court proceedings helps to frame Petitioner's challenges. At the invocation hearing, the State called Jennifer Alpert, a psychologist with the Ohio Department of Youth Services ("ODYS"), to testify.  (ECF No. 2-2 at PageID #: 87-88).  Alpert was providing treatment to Petitioner two to three times a week.  (*Id.* at PageID #: 90-91).  Alpert also administered the J-SOAP to Petitioner in August 2014 and determined Petitioner's need for treatment to be high based on his denial of involvement in the underlying offense.  (*Id.* at PageID #: 94-95).  The test was readministered in late December 2015 or January 2016, at which time Petitioner was still denying involvement in the offense such that his need for treatment continued

23

to be assessed as high.  (*Id.* at PageID #: 95).  In mid to late January 2016, Petitioner told Alpert he was ready to take responsibility.  (*Id.* at PageID #: 96).  However, Petitioner failed to successfully complete Victim Awareness Programing because a required victim apology letter was written to Petitioner's father and the victim's mother as opposed to the victim herself.  (*Id.* at PageID #: 101-02).  Alpert opined that Petitioner needed to continue to work on emotional confidence and family origin dynamics as well as complete a certified Sex Offender Treatment Program to be successful in the community and there would be insufficient time for him to complete the necessary treatment prior to his twenty-first birthday.  (*Id.* at PageID #: 108-09).

The State also called Scott Spohn, a psychology assistant with ODYS.  (ECF No. 2-2 at PageID #: 136-37).  Spohn was the treatment provider for Petitioner's Phase I sex offender group and indicated Petitioner put in limited effort during treatment.  (*Id.* at PageID #: 140, 153).  Ultimately, Petitioner did not successfully complete Phase I of treatment.  (*Id.* at PageID #: 157-58).

Finally, the state called Hasani Ngozi, a juvenile parole officer for ODYS.  (ECF No. 2-2 at PageID #: 170-71).  Ngozi testified that Petitioner refused to participate in sex offender treatment during his appeal.  (*Id.* at PageID #: 178-79).  However, Petitioner was involved in other programing at the institution and "doing great in everything but the treatment."  (*Id.* at PageID #: 188-89).

After the State rested, defense counsel called Victor Osula, a social worker at ODYS who had worked with Petitioner.  (ECF No. 2-2 at PageID #: 205).  Osula's testimony highlighted positive reports concerning Petitioner's behavior, progress in the institution, family support, and plans for the future.  (*Id.* at PageID #: 210-21).  Petitioner's security classification remained at

minimum throughout his time at the institution.  (*Id.* at PageID #: 221-22).  Osula had no concerns about Petitioner's behavior.  (*Id.* at PageID #: 224).

Defense counsel also called Natalie Trachsel, a social work supervisor with ODYS.  (ECF No. 2-2 at PageID #: 231-32).  Trachsel described Petitioner as a "model prisoner."  (*Id.* at PageID #: 234).  Based on Petitioner's low score in the Ohio Youth Assessment System, Trachsel opined that he was at a low risk to reoffend.  (*Id.* at PageID #: 235-36).

Finally, defense counsel called Lamar Wilson, a current maintenance repair worker and former youth specialist for ODYS who had worked with Petitioner.  (ECF No. 2-2, PageID #: 242-43).  Petitioner also worked as an apprentice to Wilson, who was providing him "a pretty broad education in building maintenance and repair."  (*Id.* at PageID #: 244).  Wilson never had any issues with Petitioner's behavior.  (*Id.* at PageID #: 244-45).

The trial court issued a written decision addressing the state's motion to invoke the adult sentence.  (ECF No. 9-1, PageID #: 867-73).  In doing so, the court set forth the standard that must be met to invoke the adult sentence under Ohio Revised Code § 2152.14(E), including that the individual must have engaged in conduct that creates a substantial risk of safety or security to the community and the conduct demonstrates that the person is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.  (*Id.* at PageID #: 868).  The trial court recognized that Petitioner "was, in many ways, a model youth while in the custody of ODYS."  (*Id.* at PageID #: 870).  But the court noted that Petitioner's record was "replete with notations that not only did [he] fail to complete sex offender treatment, he actively refused to participate despite the prodding of the Court and staff at ODYS."  (*Id.*).  The trial court also found Petitioner's "lack of empathy for the victim" to be concerning.  (*Id.* at PageID #: 871).  The court found that Petitioner's "defiance and failure to timely engage in treatment constitutes conduct that demonstrates that [he] ha[d] not

been rehabilitated during the course of his ODYS commitment and cannot complete treatment so that he c[ould] safely enter the community in the few days that remain[ed] before his 21st birthday." (*Id.* at PageID #: 872).  Further, "[a]bsent an understanding of his triggers, his cycle and what he needs to do to refrain from similar offenses, the Court f[ound] that [Petitioner] ha[d] engaged in conduct that pose[d] a substantial risk to the safety of the community." (*Id.*).  Thus, the court granted the State's motion to invoke the adult sentence. (*Id.* at PageID #: 873).

Petitioner raised his claims of ineffective assistance in his state post-conviction relief petition.  In finding Petitioner's claims meritless, the trial court concluded Petitioner failed to establish deficient performance and prejudice as required by *Strickland*. (ECF No. 9-1, PageID #: 1427-29).  As to the failure to cross examine witnesses regarding use of the J-SOAP-II, the court concluded "[f]urther examination of the witnesses by defense counsel on the J-SOAP-II tool, or the eliminating [sic] the State's evidence on that tool entirely would not have changed the outcome of the proceeding" because the court "did not rely on the J-SOAP-II tool in rendering its decision" but rather on "Defendant's delay in engaging in sex offender treatment, Defendant's lack of progress, or ultimately the Defendant's failure to complete sex offender treatment," as well as his failure to take responsibility for the offense and inability to identify the triggers which led him to offend. (*Id.* at PageID #: 1427).  Similarly, the court concluded Petitioner failed to establish that the use of an expert by Petitioner's counsel would have changed the outcome of the proceeding because "the Court did not rely on the Defendant's J-SOAP-II score when reaching the conclusion to invoke the adult portion of the Defendant's sentence." (*Id.* at PageID #: 1428).

Turning to counsel's failure to challenge the use of Petitioner's statements during treatment based on the lack of *Miranda* warnings, the court was "not convinced that the Defendant was being 'interrogated' during his counseling sessions as that term is defined in *Miranda* and its progeny"

26

such that the Fifth Amendment was not implicated, and counsel was not deficient for failing to raise the issue.  (*Id.* at PageID #: 1428-29).  Finally, the court concluded Petitioner did not have a right to counsel with respect to statements made to medical witnesses such that counsel's failure to raise the issue did not amount to deficient performance.  (*Id.* at PageID #: 1429).

> b.    *Analysis*

The undersigned finds the state trial court's reasoning for denying each of Petitioner's ineffective assistance claims persuasive.

As to the first claim, while Petitioner argues his counsel was ineffective for failing to cross examine the State's witnesses regarding their allegedly improper use of and reliance on the J-SOAP-II tool, the trial court explicitly indicated it did not rely on this data in reaching the decision to invoke Petitioner's adult sentence.  (ECF No. 9-1, PageID #: 1427).  In fact, the J-SOAP is not mentioned or relied on in the court's order granting the State's motion to invoke the adult sentence. (*See id.* at PageID #: 867-73).  Petitioner argues the factors the court relied on—including his "delay in engaging in sex offender treatment, his lack of progress, and failure to complete the treatment"—are exactly what the J-SOAP is designed to capture.  (ECF No. 2 at 18).  However, the trial court did not rely on the witnesses' testimony regarding the J-SOAP or how it applied to Petitioner but rather relied on specific notes throughout the record demonstrating Petitioner's failure to complete sex offender treatment, lack of empathy, and focus on the impact on his own life rather than engaging in treatment.  (ECF No. 9-1, PageID #: 870-72).  Because the court did not rely on the J-SOAP data in determining invocation was warranted, Petitioner cannot show that he was prejudiced by counsel's failure to cross examine the State's witnesses regarding their use of this tool.

Similarly, Petitioner cannot establish he was prejudiced by counsel's failure to engage an expert concerning the J-SOAP because it was not the J-SOAP data that the court relied on in deciding to invoke the adult sentence but rather Petitioner's own actions reflected in the treatment notes.  There is simply no reason to believe that an expert would have altered the trial court's perception of the treatment notes the court relied on.  Because Petitioner cannot establish prejudice on either of his first two claims, he cannot establish ineffective assistance of counsel under *Strickland*.

Turning to Petitioner's *Miranda* based ineffective assistance claim, the undersigned finds counsel was not deficient for failing to challenge the lack of *Miranda* warnings during Petitioner's treatment.  Importantly, counsel is not ineffective for failing to raise a meritless claim.  *See Porter v. Eppinger*, No. 19-3443, 2021 WL 3828113, at *2 (6th Cir. Aug. 27, 2021) ("It is elementary that counsel cannot be ineffective for failing to raise a meritless objection.") (collecting cases); *see also Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit.").  Thus, if a *Miranda* based objection would have been meritless, counsel could not have been ineffective.

The undersigned agrees with the trial court's conclusion that *Miranda* was not implicated in Petitioner's treatment.  As the United States Supreme Court has explained:

> To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the *Miranda* Court held, suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation.

*Thompson v. Keohane*, 516 U.S. 99, 107 (1995) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).  "A defendant does not lose this protection by reason of his conviction of a crime;

notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are compelled they are inadmissible in a *subsequent* trial for a crime *other than that for which he has been convicted*."  *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (emphasis added).

Here, however, Petitioner was convicted and sentenced before any of the challenged statements were made.  (*See* ECF No. 9-1 at PageID #: 755).  The adult sentence was part of the original sentence but was simply stayed pending Petitioner's "successful completion of his juvenile disposition."  (*Id.*).    Thus, the statements were not used in a subsequent proceeding or even to enhance a previously imposed sentence.  Rather, the statements were used to show that Petitioner had not successfully completed his juvenile disposition as required based on his failure to complete sex offender treatment.  Further, if Petitioner opted to remain silent, he likewise would have been unable to successfully complete treatment and the outcome of the invocation proceedings would have been the same.  Accordingly, any *Miranda* based challenge was meritless and defense counsel was not ineffective for failing to raise a meritless challenge.

Finally, as to Petitioner's claim that his counsel was ineffective for failing to move to suppress his statements during treatment because his counsel was not present, the undersigned concludes Petitioner has not established that he had a right to have his counsel present for such treatment.  Petitioner does not cite, nor has the undersigned found, any precedent establishing Petitioner had a right to have counsel *present* during his treatment sessions.  While the United States Supreme Court has recognized that a criminal defendant has a "right to the assistance of counsel before submitting to [a] pretrial psychiatric interview," the Court did not address whether a defendant had "any constitutional right to have counsel actually present during the examination." *Estelle v. Smith*, 451 U.S. 454, 469, 470 n.14 (1981).  In fact, the Court recognized the lower court's

statement that having "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination." *Id.* at 470 n.14.  Further, contrary to Petitioner's argument, his treatment was not conducted to gather evidence to support invoking the adult sentence but rather to assist in his rehabilitation.  *See* Ohio Rev. Code § 2152.01(A) (listing rehabilitation as one of the "overriding purposes" for juvenile dispositions); Ohio Rev. Code § 5139.13 (requiring ODYS to "[p]rovide treatment and training" to children in its care, including "treatment that is appropriate for a child who commits an act that is a sexually oriented offense or a child-victim oriented offense and that is intended to ensure that the child does not commit any subsequent act that is a sexually oriented offense").  Thus, Petitioner has not shown that he had a right to counsel during his treatment sessions.  *See United States v. Lester*, 201 F.3d 441 (6th Cir. 1999) (finding defendant had no right to counsel during a psychological examination conducted by the Michigan Department of Corrections because the examination was "not conducted to elicit incriminating statements" and did not place defendant in an adversarial position to the government).  Petitioner has not shown that he had a right to counsel during his treatment sessions and therefore he cannot establish that his counsel was ineffective for failing to move to suppress statements from his treatment.

Because Petitioner cannot establish ineffective assistance of counsel under *Strickland*, he is not entitled to relief on ground three.

## VI.   Certificate of Appealability

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right.").  The "petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Here, Petitioner's grounds for relief are all procedurally defaulted, non-cognizable, and/or meritless.  If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial showing of a denial of a constitutional right.  He would then not be entitled to a certificate of appealability.  Thus, I recommend that the Court not issue a certificate of appealability.

## VII.  Recommendation

Petitioner has presented only procedurally defaulted, non-cognizable, and/or meritless claims.  Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

Dated: February 23, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).