IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| D'MARGUES JONES, | ) | Case No. 5:25-cv-0098 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE CARMEN E. |
| | ) | HENDERSON |
| TOM WATSON, *Warden of North Central* | ) | |
| *Correctional Institution*, | ) | **OPINION & ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

On February 23, 2026, Magistrate Judge Carmen E. Henderson issued a report and recommendation ("R&R") recommending that the Court dismiss or deny each ground in Petitioner D'Marques Jones' petitioner for a writ of habeas corpus. ECF Doc. 12. On March 10, 2026, Jones filed six objections to Magistrate Judge Henderson's R&R. ECF Doc. 14. The Court has conducted a *de novo* review of Magistrate Judge Henderson's R&R and agrees with her recommendations. For the reasons stated below, the Court overrules Jones' objections and adopts the R&R.

## I.    Background

The procedural background of Jones' case is lengthy and complex, though not every detail need be discussed here in order to understand this Court's reasoning on each of Jones' objections. Instead, this Court incorporates by reference Magistrate Judge Henderson's recitation of the Ohio state court proceedings, including Jones' direct appeals and state habeas petitions, *see* ECF 12 at 1-7, 23-27, and assumes a general familiarity with the facts. The portions of procedural history necessary to understand this Opinion and Order are as follows.

Following a jury trial in the Summit County Court of Common Pleas, Juvenile Division ("Juvenile Court"), Jones was found guilty of rape and felony murder on December 17, 2012. ECF 9-1, at 22-23.[1] Subsequently, the Juvenile Court determined Jones was a Serious Youthful Offender ("SYO"), O.R.C. § 2152.13, and imposed a two-part sentence. *Id.*, at 24-25. First, Jones was committed to the custody of the Ohio Department of Youth Services ("ODYS") through his twenty-first birthday, with the goal of rehabilitation. *Id.* Second, the Juvenile Court imposed an adult sentence of life imprisonment with the possibility of parole after twenty-five years but stayed the adult sentence "pending the Juvenile's successful completion of his juvenile disposition." *Id.*, at 25.

On October 7, 2016, the State of Ohio filed a motion to invoke the adult portion of Jones' SYO sentence and requested an emergency hearing given that Jones' twenty-first birthday was on November 27, 2016. *Id.*, at 74-78. Jones' upcoming birthday was significant because, in general, Juvenile Court's jurisdiction over a juvenile ends once they turn twenty-one. *See, e.g.*, *In re R.B.*, 162 Ohio St.3d 281, 2020-Ohio-5476, ¶ 27; *accord* O.R.C. 2152.02(C)(6) (providing, in relevant part, that "[t]he juvenile court has jurisdiction over a person who is adjudicated a delinquent child . . . prior to attaining eighteen years of age until the person attains twenty-one years of age . . ."). Jones moved to dismiss the State's request and filed an opposition to the motion. ECF 9-1, at 91-103. In order to invoke the adult potion of an SYO sentence, the Juvenile Court was required to determine, by clear and convincing evidence, "whether D'Marques engaged in the conduct or acts under R.C. 1252.14(A), (B), or (C) and whether his conduct demonstrates that he is unlikely

---

[1] ECF 9-1 is the state court record in its entirety, indexed by Respondents into exhibits by unique document. Given the overwhelming size of the record (nearly 1000 pages), citations to ECF 9-1 will use the page number of the PDF file as the pincite.

to be rehabilitated during the remaining period of juvenile jurisdiction." *Id.*, at 139; *see also* O.R.C.

§ 1252.14(E)(1). The Juvenile Court also noted that:

> [t]he Ohio Supreme Court has also held that the Court may enforce the adult portion of the sentence at a later time if the juvenile engages in certain conduct that indicates that the juvenile cannot be rehabilitated within the time of juvenile court jurisdiction that remains and that the disposition has been unsuccessful in rehabilitating the juvenile.

ECF 9-1, at 138 (citing *State v. D.H.*, 2009-Ohio-9, ¶ 2, 901 N.E.2d 209, 210, and *In re C.P.*, 2012-Ohio-1446, ¶ 81, 967 N.E.2d 729, 750). Following a two-day hearing on November 17-18, 2016 ("Invocation Hearing"), where six ODYS employees testified, the Juvenile Court granted the State's motion to invoke the adult sentence. *Id.*, at 137-43.

Jones filed a timely appeal of the Juvenile Court's determination. The appellate court affirmed the invocation of Jones' adult sentence on February 14, 2018. *Id.*, at 277-88. The Ohio Supreme Court declined to accept jurisdiction of Jones' appeal of the appellate court decision. *Id.*, at 323. Simultaneously, Jones also sought relief by filing a petition for post-conviction relief in Juvenile Court on January 31, 2018. *Id.*, at 324. Jones asserted violations of his Fifth Amendment right against self-incrimination; his Sixth Amendment right to counsel; his Sixth Amendment right to a jury trial; and his Fourteenth Amendment right to equal protection, as well as claiming ineffective assistance of trial counsel. *Id.*, at 324-34. Following briefing, the Juvenile Court denied Jones' petition on June 29, 2018, finding that all of Jones' claims were barred by *res judicata*. *Id.*, at 432-35.

Following some jurisdictional ping-pong between the Juvenile Court and the appellate court regarding the timeliness of Jones' post-conviction petition, Jones appealed the Juvenile Court's denial of his post-conviction petition for relief. On subsequent review, the appellate court affirmed in part and reversed in part, finding the Juvenile Court did not err in finding that Jones'

3

first, second, and a portion of his fifth claim for relief were barred by *res judicata*, but that it did err in dismissing the remainder of his fifth claim for relief (ineffective assistance of counsel). *Id.*, at 561-70. On remand, the Juvenile Court found that Jones "ha[d] failed to set forth a basis to demonstrate that the trial counsel [at the Invocation Hearing] was deficient, or that there is a reasonable probability that, but for the alleged incidents of deficient counsel, the result of the [Invocation Hearing] would have been different." *Id.*, at 694-700.

Jones timely appealed the Juvenile Court's decision on the merits of his ineffective assistance of counsel claim. Following initial briefing and oral argument, the appellate court ordered supplemental briefing on the issue of whether the Juvenile Court had jurisdiction to hear Jones' post-conviction petition in the first place. *Id.*, at 826-27. On September 29, 2023, the appellate court affirmed the dismissal of the post-conviction petition "on other legally correct grounds," holding that, rather than dismissing the petition for failing to set forth sufficient facts establishing any substantive grounds for relief, the Juvenile Court should have dismissed the petition based on a lack of subject matter jurisdiction. *Id.*, at 890-99. Following a timely appeal by Jones, the Ohio Supreme Court declined to accept jurisdiction. *Id.*, at 926.

On January 20, 2025, Jones filed the instant petition for writ of habeas corpus, challenging the invocation of his adult sentence at the Invocation Hearing. ECF 1. In his petition, Jones raised three grounds for relief:

1. Ohio's SYO statutory scheme is unconstitutional as applied to Jones because it violates his Sixth Amendment right to counsel.

2. Ohio juvenile courts have jurisdiction over a post-conviction petition filed in the juvenile court after the adjudicated delinquent has reached the age of 21.

3. Jones' Sixth Amendment rights were violated when his trial counsel provided ineffective assistance at his Invocation Hearing.

4

*Id.*, at 6-9. Respondent filed a return of writ on August 25, 2025. ECF 9. On September 22, 2025, Jones filed a reply in support of his petition. ECF 10. Respondent filed a sur-reply on September 25, 2025. ECF 11. Magistrate Judge Henderson reviewed the record and the briefings by both parties, and issued an R&R on February 23, 2026. ECF 12.

## II. Legal Standards

### A. Review of an R&R

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."); L.R. 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections"). After review, the district court judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in the application of state law . . .

5

are usually not cognizable in federal habeas courts." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

Additionally, under 28 U.S.C. § 2254(b), a state prisoner seeking federal habeas relief must exhaust "the remedies available in the courts of the State" or show that (1) there is an absence of available State corrective process or (2) circumstances exist that render such process ineffective to protect the prisoner's rights. "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. However, when a petitioner fails to exhaust all of his state law remedies but can no longer do so under state law, the claim becomes procedurally defaulted. *Id.* at 848.

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by the state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally*

*Wainwright v. Sykes*, 433 U.S. 72, 80, 84-84 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the petitioner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "firmly established and regularly followed" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "ordinary appellate review procedures," and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*,

7

518 U.S. 152, 161-62 (1996) ("Because [the exhaustion] 'requirement . . . refers only to remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" (internal citations omitted)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. Under this test, cause "must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### C. AEDPA Standard of Review

Because Petitioner is a state prisoner seeking federal habeas relief, his petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), and corresponding case law.

Turning to claims addressed on the merits in state court proceedings, 28 U.S.C. § 2254(d) provides that federal habeas relief shall not be granted unless the state court decision: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the

petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 584 U.S. 122, 128 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.")

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510,

9

528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

### III. Discussion

Jones raises six objections to the R&R, objecting to:

1. The R&R's framing of his argument as an issue with Ohio's post-conviction and juvenile court jurisdictional statutes rather than Ohio's SYO statutory scheme.

2. The finding that he has not shown that there are no means available to him to assert his ineffective assistance claims.

3. The finding that he should have raised his ineffective assistance of counsel claims to the Ohio Supreme Court.

4. The finding that his ineffective assistance claim for failing to adequately cross-examine the State's mental health witness was meritless.

5. The finding that his ineffective assistance claim for failing to seek funding for, employ, consult with, and present the testimony of a mental health expert was meritless.

6. The R&R's recommendation that he be denied a certificate of appealability.

*See generally* ECF 14. Jones' first objection is not a proper objection, as it merely states his disagreement with how Magistrate Judge Henderson chose to write the R&R. Whether framed as an argument regarding Ohio post-conviction and juvenile court jurisdictional statutes or an argument regarding Ohio's SYO statutory scheme, the underlying facts are still the same. The framing of the argument also does not change the legal analysis utilized to determine whether or not Jones was denied an opportunity to raise his ineffective assistance of counsel claims. As such, the Court is not required to address it. *See Aldrich,* 327 F.Supp.2d at 747-48 ("A general objection to the magistrate's report has the same effect as a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless."); Fed. R. Civ. P. 72(b)(3).

## A. Jurisdictional Objections

Objections two and three can generally be grouped together as objections to the R&R's finding that Jones had failed to exhaust or otherwise procedurally defaulted on his ineffective assistance of counsel claims. In essence, Jones decries the difficult and perplexing situation the latest state appellate court's decision left him in. Despite years of litigation on the merits of his post-conviction relief petition, the appellate court appeared to *sua sponte* question whether the Juvenile Court possessed subject-matter jurisdiction to review Jones' post-conviction relief petition in the first place because Jones had filed the petition after he had already turned

11

twenty-one. *Cf.* ECF 9-1, at 870 (State's Supplemental Appellate Brief of April 26, 2023, noting that "[d]uring oral arguments in this case on April 13, 2023, one of the panel's Judges questioned counsel . . . regarding whether the Summit County Juvenile Court possessed subject matter jurisdiction to entertain [Jones'] postconviction relief petition, which he filed after he had been adjudicated delinquent, had turned age 21, and the Juvenile Court had imposed the adult portion of his dispositional sentence. Neither the parties nor the Juvenile Court had addressed this issue below."). The order handed down by the appellate court does not indicate where Jones could have or should have filed his petition—only that it could not be heard by the Juvenile Court. *See* ECF 9-1, at 890-96. When read with the statutory language requiring that post-conviction relief petitions be filed "in the court that imposed sentence," it is not necessarily clear that the Summit County Court of Common Pleas could have heard Jones' petition either, because, in general, the judge required to preside at a post-conviction proceeding would be the original judge from the Juvenile Court. *See. Beatty v. Alston*, 43 Ohio St.3d 126, 127, 330 N.E.2d 921, 923 (1975) (holding that Ohio Rule of Criminal Procedure 25(B) "commands that unless unable to do so, the judge who presided at a criminal trial must also preside at post-conviction proceedings"); *accord State v. Calhoun*, 86 Ohio St.3d 279, 286, 1999-Ohio-102, 714 N.E.2d 905 , 913 (1999) (observing that, when assessing the credibility of affidavits in a post-conviction relief proceeding, that because the trial judge "was familiar with the underlying proceedings" they were "in the best position to observe the defendant and his attorney and therefore assess the credibility of the affidavits").

Yet, at the same time, how a state chooses to structure its system for post-conviction relief is a matter of state law. And "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Jones argues that this jurisdictional complication implicates federal questions, and is therefore a

12

cognizable habeas claim, because "Ohio has created post-conviction relief and is administering it unfairly" in violation of the Supreme Court's holding that "when a state institutes an appellate system, the system must be constitutional and fairly applied." ECF 2, at 11 (citing *Halbert v. Michigan*, 545 U.S. 605, 610 (2005)). Respondent noted, though, that this claim is non-cognizable because "[h]abeas corpus petitions 'cannot be used to mount challenges to a state's scheme of post-conviction relief.'" ECF 9, at 22 (quoting *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854-55 (6th Cir. 2017)).

However, this Court need not reach the constitutional question of whether Ohio's postconviction relief procedures "are fundamentally inadequate to vindicate the substantive rights provided" in cases such as Jones'. *District Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69, (2009). This is because, as described below, Jones' ineffective assistance claims are meritless. This would remain true, regardless of what the appropriate venue may be for Jones' post-conviction relief petition.

### B. Merits Objections

Objections four and five both pertain to the R&R's findings that Jones' ineffective assistance of counsel claims are meritless. In his initial habeas petition, Jones raised four separate ineffective assistance of counsel claims. In his objections, Jones only raises two claims—both of which pertain to how his counsel at the Invocation Hearing handled testimony from the State's mental health experts.

As an initial matter, the Court finds it relevant to note that objections four and five "merely restate[] the arguments, and the same facts, presented to and rejected by the magistrate judge" in the R&R. *Aldrich*, 327 F.Supp.2d at 748. This would be grounds to dismiss the objections without any further consideration because an objection that "simply summarizes what has been presented

13

before, is not an 'objection' as that term is used in this context." *Id.* at 747. However, the Court agrees with Magistrate Judge Henderson's finding that Jones' ineffective assistance of counsel claims are meritless.

To establish ineffective assistance of counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A reviewing court's scrutiny of counsel's performance must be highly deferential. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Jones argues that "his counsel was ineffective for failing to cross examine the State's witnesses regarding their allegedly improper use of and reliance on the J-SOAP-II tool." ECF 12, at 27. However, as noted in the R&R, the Juvenile Court's order imposing the adult sentence does not mention or otherwise rely on J-SOAP-II. *Id.* And whether the Juvenile Court's reliance on factors, such as "Jones['] delay in engaging in sex offender treatment, his lack of progress, and failure to complete the treatment," actually "stem from the J-SOAP-II administration and results" is of no consequence because it does not change the fact that the underlying evidence still exists. The J-SOAP-II is simply a way of potentially interpreting that evidence by "provid[ing] the user with probabilistic estimates of risk for sexual recidivism." ECF 9-1, at 346 (J-SOAP-II Manual).

14

In that sense, it is no different than an assessment used to calculate a likelihood of a criminal defendant re-offending.

The Juvenile Court's opinion makes no mention whatsoever of the J-SOAP-II assessment, let alone any reference to a quantitative or qualitative assessment of risk of recidivism. Nowhere does the Juvenile Court say anything about how certain opinion testimony from the State's mental health experts made it more or less likely that Jones would reoffend. Rather, the Juvenile Court's opinion goes into great detail how Jones' own actions "demonstrate[ed] Petitioner's failure to complete sex offender treatment, lack of empathy, and focus on the impact on his own life rather than engaging in treatment." ECF 12, at 27 (citing ECF 9-1, at 140-42); *see also id.*, at 28 (Juvenile Court noting "it was not the J-SOAP data that the court relied on in deciding to invoke the adult sentence but rather Petitioner's own actions reflected in the treatment notes"). Further, the Juvenile Court observed that Jones failure to complete the sex offender treatment "was an integral part of this Court's decision to maintain jurisdiction and stay his adult sentence pending completion of treatment at ODYS," and it was this failure in particular that led the Juvenile Court to conclude that Jones "ha[d] engaged in conduct that poses a substantial risk to the safety of the community" and "that imposing the stayed adult sentence is the only appropriate action that the Court can take at this time to assure community safety." ECF 9-1, at 142-43.

The closest anything in the opinion comes to appearing to rely on a risk assessment is citing an expert report that makes a brief initial mention of "initial reassessment and current reassessment scores," before detailing Jones' actions and statements that underlaid that assessment. *Id.*, at 141-42. It is clear that the Juvenile Court did not rely on any specific assessment or reassessment score in coming to its conclusions. Indeed, the Juvenile Court plainly stated that it "[found] that D'Marques' defiance and failure to timely engage in treatment constitute[d] conduct that

demonstrates[d] that D'Marques ha[d] not been rehabilitated during the course of his ODYS commitment and cannot complete treatment so that he can safely enter the community in the few days that remain before his 21st birthday." *Id.*, at 142. The testimony that Jones alleges would have come out on cross-examination[2] does not change the underlying fact that Jones did not complete the sex offender treatment he was required to complete as a condition of his SYO sentence. Because of this, Jones cannot show that he was prejudiced by his "counsel's failure to cross examine the State's witnesses regarding their use of this tool." ECF 12, at 27.

Jones' other objection regarding counsel's failure to engage an expert concerning the J-SOAP-II meets the same fate. "There is simply no reason to believe that an expert would have altered the trial court's perception of the treatment notes the court relied on." *Id.*, at 28. Because Jones cannot demonstrate prejudice on either of these claims, he cannot establish ineffective assistance of counsel under *Strickland*.

### C. Remaining Objection

Lastly, Jones' sixth objection is to Magistrate Judge Henderson's recommendation that he be denied a certificate of appealability. The Court does not find that "reasonable jurists could disagree regarding the disposition of this case" because he has not made a substantial showing of a denial of a constitutional right. ECF 14, at 9; *see also* 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). Therefore, the Court is disinclined to disturb the R&R's recommendation on this matter.

---

[2] Jones alleges that, had his counsel "properly" cross-examined the State's witnesses, it would have elicited testimony about how the J-SOAP-II should be administered, its appropriateness for offenders his age, its experimental nature, and its "overall limited value," among other potential issues. *See* ECF 14, at 6 (listing facts that would have been elicited "[h]ad defense counsel cross-examined Dr. Alpert and Mr. Spohn effectively").

IV.    **Conclusion**

Upon *de novo* review, the Court agrees with Magistrate Judge Henderson's findings, OVERRULES Jones' objections, ADOPTS the R&R, and DENIES Jones' petition for habeas review. The Court also DENIES Jones' request for a certificate of appealability.

IT IS SO ORDERED.


Dated: March 19, 2026

*s/Dan Aaron Polster*
United States District Judge
